[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name was Kathleen M. Calio, and the defendant were married on May 1, 1988 at Tarrytown, New York. The plaintiff has resided continuously in the State of Connecticut for at least twelve months next preceding the date of the filing of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of the CT Page 12368 marriage: Grace Elizabeth Hardin, born September 18, 1991; and Mathew Dillon Hardin, born September 13, 1993. No other minor children have been born to the plaintiff wife since the date of the marriage. The State of Connecticut has not contributed to the support of either of the parties or the children to this action. The Court finds the following additional facts:
The plaintiff was born on October 1, 1962. The plaintiff's physical and emotional health is good. She did receive some counselling regarding the marital breakup commencing approximately December, 1993. The plaintiff has a Bachelor of Arts degree in Art History from Marymount College. The plaintiff was employed as a special education teacher prior to the marriage of the parties. She was also employed at Tiffany's for a period of time until immediately prior to the birth of the first child working as a bridal consultant and earning approximately $25,000 per year. Since the birth of the first child, she did not work until recently. She resumed working in about July of 1995, averaging two and one-half hours weekly. The parties agree that the plaintiff would not work outside of the family home after the first child was born. She is now employed as an assistant in a special education classroom. She is prepared to work additional hours part-time if it fits in with the children's schedule. She intends to return to full-time employment in September of 1998 when the youngest child is in kindergarten. The plaintiff will then be allowed to reenter the job market without having the responsibility of remaining at home to care for the children during the day and she will therefore no longer need alimony. The Court finds that, in accordance with section 46b-82, it is desirable that the plaintiff not be required to secure full-time employment prior to the time that the youngest child is in kindergarten. It is for that reason that the Court is entering a time limited alimony award. She is not a licensed teacher and would need to return to school to obtain her license. The plaintiff presently resides in Ridgefield where the parties resided for approximately seven and one-half years until they separated. Prior to the plaintiff being employed at Tiffany, she had employment that was earning approximately $18,000 annually. Her employment at Tiffany's was from the Summer of 1989 to the end of August, 1991, with gross annual earnings of approximately $24,000 to $25,000. She is paid $20 per hour at her present employment.
The defendant is forty-four years old. The defendant's physical health is good. He has had some episodes of depression CT Page 12369 and chest pains at about the time of the breakup of the marriage. The defendant has a bachelor's degree from Yale and a master's degree from the University of New Mexico and has some credits from the City University of New York towards a doctor's degree. He is a highly skilled musician and composer. The defendant is employed as a music teacher and also works in a book store. He currently works on Monday, Tuesday, Wednesday and Friday at the Foundry Music Store from 10:00 a.m. to 3:00 p. m. and at the Neighborhood Music Store from 3:00 p. m. to 7:30 p. m. He works on Thursday at the Neighborhood Music Store from 3:15 p. m. to 8:00 p. m. He works on Saturday at the Neighborhood Music Store, once a month, from 2:00 to 4:00 p. m. and occasionally he works on Saturday at the Foundry Music Store from 10:00 a.m. to 3:00 p. m. He does not work on Saturday at either place when he is exercising visitation rights. He does not work on Sundays. He was employed at the University of Bridgeport until 1990. From 1990 to the present time, he has been employed as a piano teacher at the Neighborhood Music School in New Haven, Connecticut. He was the music department chairman until he resigned on or about July, 1993. He received an additional $3,000 annually for the position of department chairman. His part-time employment is at the Foundry Music Store in New Haven, Connecticut. The defendant presently resides in a small two-bedroom apartment in New Haven, Connecticut, with a roommate. He elected to reside in the New Haven area in order to be closer to his work. It takes approximately one hour to drive from the defendant's residence, in New Haven, to the plaintiff's residence, in Ridgefield.
He is presently collaborating as co-author with Daniel Schilecci in putting music to a "Tale of Two Cities." That project started in the Fall of 1991. He has spent a great deal of time in collaborating on that project. The project is approximately 70 percent complete. At the present time, there is no firm backer to produce the play. The defendant hopes to have the "Tale of Two Cities" produced on stage as a Broadway musical. Authors normally receive 5 percent of the box office receipts and 20 percent of the receipts from recordings. The defendant would therefore receive 2 1/2 percent of the box office receipts and 10 percent of the recording receipts. The defendant's work on the "Tale of Two Cities" is approximately 70 percent completed. The remaining 30 percent will be completed when the play goes into production.
The plaintiff is presently employed by Project Interact, Inc. She works Wednesday mornings for two and one-half hours grossing CT Page 12370 $50 per day and netting $46.17 per day. It costs her $18 for child care weekly during the time she is employed. She presently receives $175 weekly support from the defendant which is in accordance with the child support guidelines. The defendant's employment provides for health insurance through an HMO in the New Haven area. Many of the health providers are not available to the plaintiff in the area that she resides. The plaintiff took out a private health policy covering her and the two children. The cost of that policy is $53.22 weekly. At the present time, the defendant reimburses her for the cost of that policy. The guideline calculations take into consideration the fact that the defendant is providing the health insurance by reimbursing the plaintiff for the cost of that insurance. The plaintiff's financial affidavit, dated September 18, 1995, shows a liability to Mt. Kisco Medical Group with a balance due of $5,251.84. Pendente lite orders are entered in this case on January 4, 1994. The amount due to Mt. Kisco as of that date was $3,393.60. Mt. Kisco is a pediatrician group providing health treatment for the two minor children. The plaintiff's obstetrician is part of that same group and a small amount of that bill is for the plaintiff. The plaintiff's financial affidavit also shows a liability to Northern Westchester Hospital with a balance due of $791. That total liability was incurred prior to pendente lite orders and was for both the plaintiff and two minor children. Her affidavit also shows a Citibank Mastercard with a balance of $800. That is a Mastercard that is in the plaintiff's name only. She owns shares of stock in Tiffany and Co. worth approximately $125 and has United States Savings Bonds with a face value of $475.
The defendant has not filed his 1993 federal income tax return or his 1994 federal income tax return. He will receive an approximate $2,500 refund when he files his 1993 income tax return. The defendant's financial affidavit, dated September 21, 1995, shows two separate sources of income, one in the gross amount of $350, with $35 deduction, and the second in the gross amount of $166, with $13 deduction. The $350 gross amount is his average weekly wages on an annualized basis at the Neighborhood Music School. The $166 per week is his average weekly wages on an annualized weekly basis. He works approximately eighteen to twenty hours weekly at the Neighborhood Music School and works approximately twenty-three to twenty-five hours weekly at the Foundry Music Store. His financial affidavit shows a New Mexico student loan with a balance of $9,000. That loan was incurred in 1983. It was originally in the amount of $10,000. It carries interest at the rate of 9 percent. No payments have been made on CT Page 12371 that loan in the calendar year 1995. A few monthly payments were made prior to the time the parties separated. His financial affidavit also shows a City University of New York loan with a balance due of $700. That was incurred in 1989. No payments have been made on the loan since it was incurred. His affidavit also shows a liability to AMEX with a balance due of $600. No payments on that have been made since September of 1994. His financial affidavit, dated January 3, 1994, shows $38.33 in bank accounts of the date of the pendente lite hearing. His current financial affidavit shows $4,500 in bank accounts. The funds came from his uncle from New York and, in addition, he has added $50 monthly to his bank account since the pendente lite order. The defendant does not have any life insurance.
At the time of the marriage, the plaintiff had approximately $3,000 and owned an automobile. During the course of the marriage, the defendant obtained gifts of $10,000 each on three separate occasions for a total of $30,000. That money was used by the parties for living expenses. Prior to the time the parties separated, the plaintiff's parents did provide some funds for them for dinners out, payment of car repairs and vacations. Since the parties separated in November of 1993, the plaintiff's parents have been paying to her $1,150 monthly in order to assist her for living expenses.
The plaintiff has been the primary caretaker of the children since their birth. The defendant had very little involvement with the children regarding feeding, bathing, clothing, medical care or schooling. The defendant was upset when he learned that the plaintiff was pregnant with the youngest child. He asked the plaintiff not to tell Daniel Schilecci of her pregnancy with the youngest child. The defendant vacated the family residence on November 4, 1993. The plaintiff initially went to New York to stay with her parents when she learned that the defendant had separated because she needed help in caring for the youngest child. She remained with her parents for a few months. The defendant saw the children twice in December of 1993. The plaintiff never denied him the right to see the children. Pendente lite orders granting him visitation were granted in January of 1994. His initial visitation with the children was inconsistent. After a referral to Family Relations had been filed, the defendant's visitation remained remarkably consistent up to the present time. The parties are unable to agree on issues involving the children such as health, school and religion. The parties would not be able to successfully engage in joint CT Page 12372 decision-making in those areas. The parties are in dispute as to whether they had initially agreed to the Family Relations recommendation regarding visitation. The Court finds from the evidence presented that the parties had entered into such an agreement approving of the Family Relations recommendation regarding visitation. The defendant, at the time of trial, was no longer in agreement with that recommendation. The Court finds that the recommendation of Family Relations regarding visitation and regarding custody is in the best interest of the children and therefore accepts that recommendation. In addition, the Court finds that joint custody cannot be entered in this case because there is not an agreement as to joint custody and there was not a motion for conciliation by one of the parties following a motion for joint custody. Tabackman v. Tabackman, 25 Conn. App. 366, 368
(1991). The defendant at the present time had not spent any time with the children overnight and does not have any experience in caring for the children on overnight visitation.
The Court finds that the cause of the breakdown of the marriage is as follows:
A. The defendant's lack of interest in family life.
 B. The amount of time the defendant spent in collaborating with Daniel Schilecci regarding the "Tale of Two Cities" project.
 C. The defendant's involvement in an organization known as "Loving Relationship. " This organization is involved with Rebirthing 2000. The defendant became involved in early 1993 and sought to involve the plaintiff which she refused. The defendant told the plaintiff that the organization was involved in recovering the trauma of birth and was a healing process from the trauma of birth. Part of the loving relationship training involves the rebirthing technique.
The Court has considered the provisions of section 46b-82
regarding the issues of alimony, and has considered the provisions of section 46b-81(c) regarding the issues of property division, and has considered the provisions of section 46b-56 and46b-56a regarding the issue of custody and visitation, and has considered the provisions of section 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of section 46b-62 regarding the issue of attorney's CT Page 12373 fees. The Court enters the following orders:
ORDERS
A. By way of dissolution
 1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. By way of custody and visitation
 1. The wife shall have sole custody of the minor children. Prior to making a decision on a major issue affecting the children such as residence, health care, education, religious training and general welfare, the wife shall consult with the husband to seek his opinion. In the event of a dispute, the wife's decision shall be controlling.
 2. Commencing immediately, the husband shall have reasonable, liberal and flexible rights of visitation defined as follows:
 a. Ten weeks of visits on each Saturday from 11:30 a.m. to 5:30 p. m. and each Thursday from 10:00 a.m. to 2:00 p. m.
 b. Ten weeks of visits on each Saturday from 11:30 a.m. to 9:00 p. m. and each Thursday from 10:00 a.m. to 2:00 p. m.
 c. Ten weeks of visits on alternate weekends on both Saturday from 11:30 a.m. to 9:00 p. m. and on Sunday from 10:00 a.m. to 1:00 p. m., with visits on the alternate Saturdays from 11:30 a.m. to 5:30 p. m. and on each Thursday from 10:00 a.m. to 2:00 p. m.
 d. Following this thirty week period of time, visits would occur on an alternate weekend basis from Saturday at 11:30 a.m. to Sunday at 1:00 p. m. and on each Thursday from 10:00 a.m. to 2:00 p. m. If for some reason there is a gap in visits, the schedule of visits CT Page 12374 then in effect will be extended. The parties are to contact the Family Services Unit for a mediation appointment should they need to discuss any issues prior to overnight visitation occurring.
 e. For Christmas of 1995, the husband will visit on-premises at the wife's residence and/or in the immediate vicinity between the hours of 8:00 a.m. and noon on Christmas Day. Beginning in 1996 and each even numbered year thereafter, the children will spend from December 23 after work and/or school until approximately 4:00 p. m. on December 24 with the husband, being returned in time to attend Mass. with the wife. In odd numbered years beginning in 1997, the children will be with the husband from after Mass. on December 24 until December 25 at 1:00 p. m.
 f. The children shall be with the husband on Thanksgiving Day in odd numbered years beginning in 1995 between the hours of 9:00 a.m. and 4:00 p. m.
 g. On Easter, the children will spend time with the husband from Saturday noon until Sunday noon in even numbered years and on Sunday from 11:00 a.m. until 5:30 p. m. in odd numbered years.
 h. Other holidays including Good Friday, Memorial Day and Labor Day would attach to the alternating weekend schedule once overnight visits begin.
 i. On the children's birthdays and each parties' respective birthday, each party will be entitled to effect three hours of contact with the children should they desire to do so.
 j. The children will spend Mother's Day with the wife and Father's Day with the husband, regardless of the weekend schedule.
 k. Discussion of extended vacation times for either parent is delayed until the spring of 1996. In CT Page 12375 the event of a disagreement, the parties shall seek mediation with the Family Services Unit.
 3. Any expense or cost involved in the husband's exercise of his rights of visitation shall be and remain his responsibility and will be paid for by him. Any such cost or expense incurred by the husband in connection with the exercise of his rights of visitation shall be separate and apart from, and in addition to, any and all payments to be made to the wife by the husband for the support of the children. Without limiting the generality of the foregoing, the husband shall pay all transportation costs incurred in connection with visitation and all costs and expenses of the children incurred during the time when children are with the husband, including the costs of food and lodging, and the husband shall not be entitled to any deduction from any payments to the wife on account of amounts expended by him during the exercise of his visitation rights.
 4. Each of the parties are to keep the other reasonably informed of the whereabouts of the children while said children are with the husband or with the wife, and agrees that if either has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of said children, the husband or the wife, as the case may be, will promptly notify the other. For the purposes of this paragraph, the word "illness" shall mean any sickness or ailment which requires the services of a physician. The word "injury" shall mean any injury which requires the services of a physician. During any illness or accident, the husband shall have the right of reasonable visitation to see the children in addition to the other rights provided herein.
 5. Each of the parties will furnish the other copies of any reports from third persons or institutions concerning the health, education, or welfare of the children.
 6. The parties shall have reasonable access to the children while they are with the other party, CT Page 12376 including free access by mail and free access by telephone during reasonable hours of the day and evening. Neither party shall exercise visitation with the children in the home of the other without express consent.
C. By way of support
 1. The Court orders that the defendant pay to the plaintiff, by way of support, the sum of $175 weekly by immediate wage execution which is substantially in accordance with the support guidelines. The guideline amount would be $166.70. In addition, the Court orders that the defendant reimburse to the plaintiff, by immediate wage execution, the sum of $73 weekly to be used by her for continuing the health insurance plan that she presently has in effect.
 2. The parties shall divide equally any uncovered or unreimbursed health expenses for the minor children.
D. By way of alimony
 The defendant is ordered to pay to the plaintiff, alimony in the sum of $50.00 per week. Alimony is to terminate on the earliest of the following events:
1. The death of the plaintiff;
2. The death of the defendant;
3. The remarriage of the plaintiff;
4. September 1, 1998;
 5. Alimony is non-modifiable as to term. The provisions of section 46b-86(a) and 46b-86(b) are applicable.
E. By way of property orders
 1. The Court orders that the defendant pay $3,393.60 of the bill due to Mt. Kisco Medical Group and hold the plaintiff harmless therefrom. The Court orders that the plaintiff pay the balance of the bill due CT Page 12377 to Mt. Kisco Medical Group and hold the defendant harmless therefrom.
 2. The Court orders that the parties divide equally the bill to Northern Westchester Hospital. The Court orders that the plaintiff pay the bill shown on her financial affidavit to Citibank Mastercard and hold the defendant harmless therefrom.
 3. The Court assigns to the plaintiff the four shares of Tiffany and Company stock shown on her financial affidavit as well as United States Savings Bonds shown on her financial affidavit.
 4. The Court orders that whatever tax refund the defendant receives upon filing his 1993 and 1994 income tax returns be retained solely by the defendant.
 5. The Court orders that all of the liability shown on the defendant's financial affidavit be paid by the defendant and hold the plaintiff harmless therefrom.
 6. The Court assigns to the defendant the 1987 Nissan Sentra shown on his financial affidavit which the Court finds has a fair market value of $1,000.
 7. The Court assigns to the defendant the Yamaha electronic keyboard shown on his financial affidavit with a value of $500 as well as the bank account shown on his financial affidavit.
 8. The court hereby assigns to the plaintiff 35 percent of any revenue received by the defendant from "A Tale of Two Cities." This 35 percent is from whatever type of source the revenue derives.
 9. All bank accounts in the plaintiff's name are awarded to the plaintiff and all bank accounts in the defendant's name are awarded to the defendant.
 10. All items of furniture and personal possessions now located at the marital residence are assigned to the plaintiff with the exception of the following items CT Page 12378 which are assigned to the defendant and which he is to remove within thirty (30) days from today's date:
a. desk
b. bookshelves
c. bicycle
d. cassette player/recorder
 e. assorted books/photos/duffel bag/sleeping bag/family pieces (platter/pitcher)
f. wedding band and cufflinks.
F. By way of attorneys fees
1. No attorneys fees are awarded in favor of either party.
G. Miscellaneous Orders
 1. The parties are ordered to exchange copies of their federal and state income tax returns within thirty (30) days after such returns have been filed, by certified mail, return receipt or registered mail, return receipt, for so long as there is an outstanding support order.
 2. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to counsel for the defendant for signature and filing.
Axelrod, J.